UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | |
|---|---|
| AA, | CIVIL CASE NO. 21-00029 |
| Plaintiff, | ORDER |
| v. | |
| GENERAL CONFERENCE CORPORATION OF SEVENTH DAY ADVENTISTS, *et al.*, | |
| Defendants. | |

This matter comes before the Court on summary judgment motions from Defendants the General Conference Corporation of Seventh Day Adventists ("GCC") (Dkt. No. 85), the Guam Micronesia Mission for the Seventh Day Adventist Church ("GMM") (Dkt. No. 69), Pastor Louis Torres (Dkt. No. 70), and Pastor Steven Silva (Dkt. No. 71)[1] (collectively "Defendants"). Having thoroughly considered the briefing and relevant record, and received no CVLR 7(i) request for oral argument, the Court GRANTS in part and DENIES in part the motions as explained herein.

I.   **BACKGROUND**[2]

In 2012, Plaintiff's parents sent him from the Philippines to Guam to continue his

---

[1] *See* Docket Numbers 90–94, respectively, for redacted versions of these sealed filings.

[2] The information contained herein is undisputed, unless otherwise noted.

ORDER
CIVIL CASE NO. 21-00029
PAGE - 1

education. (*See* Dkt. No. 85 at 32.)[3] He was sixteen[4] at the time. (*Id.* at 33.) Initially, he stayed with uncles. (*Id.*) Shortly thereafter, Plaintiff was introduced[5] to Danny Dial, GMM's recently hired Director of Education. (*See* Dkt. Nos. 85 at 33, 101 at 1.) Mr. Dial invited Plaintiff to spend a few days at Mr. Dial's GMM-provided apartment. (*See* Dkt. No. 85 at 33.) During that stay, Mr. Dial sexually abused Plaintiff. (*Id.* at 34.)

      Plaintiff reported the abuse to Steven Silva, a Seventh-Day Adventist Senior Pastor. (*Id.*) Plaintiff also gave Pastor Silva a written account. (*Id.*) He provided it to Pastor Louis Torres, GMM's President. (*Id.*) Pastor Torres spoke with Plaintiff about the incident and then confronted Mr. Dial, who admitted the allegations. (*Id.*) Pastor Torres terminated Mr. Dial and visited the Guam Police Department's Hagåtña precinct. (*Id.*) But the presiding officer informed Pastor Torres that, because the age of consent in Guam is 16, absent non-consensual sexual contact, this was not a reportable offense. (*Id.*) As a result, Pastor Torres never filed a written report with law enforcement (or any other government agency). (*Id.* at 35.) At around the same time, Mr. Dial emptied his apartment and fled Guam. (*See* Dkt. Nos. 85 at 35, 101 at 2.) Some years later, in 2021, Plaintiff saw a Facebook post suggesting Mr. Dial was "teaching to the Adventist Youth in Thailand." (Dkt. No. 100 at 2.) Plaintiff felt "betrayed by the Church . . . because I trusted . . . that they had a process to stop [Mr.] Dial." (*Id.*)

      Shortly thereafter, Plaintiff filed a complaint with this Court. (Dkt. No. 1.) He initially named Mr. Dial and GMM, along with Pastors Silva and Torres. (*See generally id.*) However, serving Mr. Dial proved difficult. Plaintiff believed that he resided in either Thailand or the Philippines, if not California (where Mr. Dial had attended university). (*See* Dkt. No. 16 at 2–3.)

---

[3] *See* Docket Number 92 for a redacted version of this sealed filing, which includes GCC's concise statement of material facts at pages 32–37. GCC's Facts 1–47 are carbon copies of those put forth by Defendants GMM, Silva, and Torres. (*Compare id.*, *with* Dkt. No. 93 at 102–06.) Unless otherwise noted, Plaintiff does not dispute these facts. (*See* Dkt. No. 101 at 1–2.)

[4] In the Philippines, primary school ends at the tenth grade. (*See id.* at 46.) By moving to Guam, Plaintiff hoped to attend the eleventh and twelfth grades. (*Id.*)

[5] The parties dispute who made the introduction. (*See* Dkt. No. 99 at 1–3.)

ORDER
CIVIL CASE NO. 21-00029
PAGE - 2

Despite an extension of time, Plaintiff was unable to serve Mr. Dial. (*See* Dkt. Nos. 16, 20.) To move the case along, Plaintiff dismissed Mr. Dial, (*see* Dkt. No. 40) (notice of voluntary dismissal), and filed an amended complaint naming solely GMM, Pastor Silva, and Pastor Torres. (*See* Dkt. Nos. 50, 54) (order granting leave to amend and First Amended Complaint). Plaintiff later added GCC as a defendant. (*See* Dkt. No. 59) (order granting leave to amend again).

The Second Amended Complaint (Dkt. No. 60), which is now the operative complaint, asserts causes of action against all Defendants for child sex abuse (Count I), negligence (Count II), negligent supervision (Count III), negligent hiring and retention (Count IV), breach of fiduciary duty and/or confidential relationship (Count V), and intentional infliction of emotional distress (Count VI). (*Id.* at 8–17.) Individually, Defendants move for summary judgment (Dkt. Nos. 69–71, 85). Each contend that certain claims are legally deficient and Plaintiff fails to establish genuine issues of fact for the remainder. (*See generally* Dkt. Nos. 69–71, 85.)

## II.   DISCUSSION

### A.   Summary Judgment – Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[6] "The moving party bears the initial burden of establishing the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at

---

[6] Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In deciding whether there is a genuine dispute of material fact, a court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.* at 255. The court is prohibited from weighing evidence or resolving disputed issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But once the moving party properly makes and supports their motion, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).[7]

### B. Count I – Child Sex Abuse – Vicarious Liability

According to the complaint, each defendant is vicariously liable for Mr. Dial's acts. (*See* Dkt. No. 60 at 8.) This is in accord with the common law doctrine of *respondeat superior*, which provides that an employer is liable "for a tort committed by its employee acting within the scope of employment." 147 Am. Jur. Proof of Facts 3d. 247 (2015) (citing RESTATEMENT (THIRD) AGENCY §7.07). An employee acts within the scope of their employment "when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control" or if, after the fact, the employer engages in "conduct that justifies a reasonable assumption that the [employer] so consents" to the conduct, *i.e.*, through later ratification. *Id.* (citing RESTATEMENT (THIRD) AGENCY §4.01). Guam has codified the doctrine at 18 G.C.A. §§ 20309, 20310; *see Fajardo ex rel. Fajardo v. Liberty House Guam*, 2000 Guam 4, ¶ 7. That codification mirrors California law. *See* Cal. Civ. Code Ann. §§ 2338, 2339. For this reason, this Court can rely on decisions from both jurisdictions in applying the doctrine, given the "dearth of Guam case law" on the doctrine. *Sharrock v. U.S.*, 673 F.3d 1117, 1119 (9th Cir. 2012).[8]

#### 1. <u>GMM – Stand-Alone Liability</u>

GMM admits Mr. Dial was its Director of Education at the time of the incident. (*See* Dkt.

---

[7] Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990). Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

[8] *See Sumitomo Constr. Co., Ltd. v. Zhong Ye, Inc.*, 1997 Guam 8, ¶ 7 ("[W]hen a legislature adopts a statute which is identical or similar to one in effect in another jurisdiction, it is presumed that the adopting jurisdiction applies the construction placed on the statute by the

No. 85 at 33.) And, at least according to Plaintiff, Mr. Dial oversaw the Guam Adventist Academy, which Plaintiff hoped to attend. (*See* Dkt. No. 101 at 3.) Plaintiff argues that, because Mr. Dial used this position to lure Plaintiff to Mr. Dial's GMM-provided apartment (and perhaps recruit him as an Academy student), Mr. Dial did so within the scope of his employment. (*See* Dkt. No. 96 at 8.)

But as GMM points out this is not the law. (*See* Dkt. No. 109 at 7.) Sexual abuse is not traditionally within one's scope of employment, even when conducted by an employee entrusted with at-risk individuals, such as children or hospital patients. *See, e.g.*, *Lisa M. v. Henry Mayo Newhall Meml. Hosp.*, 907 P.2d 358, 360 (Cal. 1995); *Jeffrey E. v. C. Baptist Church*, 243 Cal. Rptr. 128, 130 (Cal. App. 1988); *Rita M. v. Roman Catholic Archbishop*, 232 Cal. Rptr. 685, 690 (Cal. App. 1986). For this reason, any claim here based on a traditional application of *respondeat superior* would fail.

However, this does not end the analysis. Plaintiff contends that, even if Mr. Dial's sexual abuse was, indeed, outside the scope of his employment, GMM later ratified Mr. Dial's acts. (*See* Dkt. No. 96 at 10–11.) Ratification can be express or implied.[9] *Fajardo ex rel. Fajardo*, 2000 Guam at ¶ 10. For GMM to have impliedly ratified Mr. Dial's acts, GMM's later conduct must be "inconsistent with any reasonable contention . . . other than that [GMM] intended approving and adopting the act[s]." *Com. Wealth Ins. Sys., Inc. v. Kersten*, 115 Cal. Rptr. 653, 661 (Cal. App. 1974). In support of this proposition, Plaintiff points to the following facts: Pastor Torres initially challenged Plaintiff's assertions, before confronting Mr. Dial with Plaintiff's letter;

---

originating jurisdiction."); *see also Fajardo ex rel. Fajardo*, 2000 Guam at ¶ 15–17 (relying on California case law in applying *respondeat superior* on the basis that "there is no compelling reason to deviate from [California's] interpretation").

[9] Ratification by implication is "based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is 'inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it.'" *Hirons v. U.S. Bank Natl. Assn.*, 2022 WL 443133, slip op. at 5 (Cal. App. 2022) (unpublished) (quoting *Behniwal v. Mix*, 35 Cal. Rptr. 3d 320, 329 (Cal. App. 2005)).

Pastor Torres discouraged Plaintiff from reporting the abuse; Pastor Torres' failed to report the abuse to Child Protective Services; and, finally, Pastor Torres' failed to inform local police that the sexual contact was, in fact, nonconsensual. (*See* Dkt. No. 101 at 4.) But as Plaintiff also admits, GMM terminated Mr. Dial and revoked his missionary credential following the incident. (*Id.* at 5.) It seems unlikely, at least to this Court, that these facts would be sufficient for a reasonable juror to conclude that GMM, through Pastor Torres' official acts, ratified Mr. Dial's conduct. But Plaintiff also suggests *GCC's* acts amounted to a ratification of Mr. Dial's conduct. (*See generally* Dkt. No. 113.)

2. GMM's Relationship with GCC

Plaintiff presents evidence that, in 2021, Mr. Dial lectured to Adventist Youth Ministries in Thailand—a video of which was available on the Adventist Youth's Facebook page. (*See* Dkt. Nos. 101 at 5, 120–22.) The inference[10] is that Mr. Dial participated in a GCC-sanctioned activity well after he admitted to abusing Plaintiff. This supports the notion that GCC impliedly ratified Mr. Dial's prior acts, as it was undoubtedly aware of his 2012 termination. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir. 1989) (describing permissible inferences at summary judgment); *Behniwal*, 35 Cal. Rptr. 3d at 329 (implied ratification). It also obviates the legal impact of Mr. Dial's earlier termination, at least to the extent GCC and GMM are inextricably linked.

Plaintiff suggests that GMM is not a separate legal entity—that it acted as GCC's doing business as ("dba") name in Guam. (Dkt. No. 113 at 2–4.) He presents significant evidence to back this up, including annual corporation filings listing GMM as GCC's "business activity," along with other activities GCC engages in within Guam. (Dkt. No. 101 at 199, 201, 202, 204, 206, 207, 208, 234, 238.) GCC's Rule 30(b)(6) deponent concedes that these activities are generally conducted by GMM, (*see* Dkt. No. 114 at 22), and/or the Academy, (*see also id.* at 106) (record listing the Academy as a GCC dba). A reasonable inference is that GMM and other

---

[10] This is an inference that GCC does not challenge on reply. (*See generally* Dkt. No. 115.)

dbas performed these activities on GCC's behalf. Plaintiff also presents the Court with GCC's annual reports listing GMM as its dba. (*See id.* at 113–27.) In addition, Plaintiff presents GCC insurance policies listing GMM as a covered activity of GCC. (*See* Dkt. No. 101 at 142–160). Finally, Plaintiff points to GCC's same Rule 30(b)(6) representative's admission that GCC owns legal title to GMM's real property. (*See* Dkt. No. 85 at 118.)

Collectively, this is more than sufficient to establish a genuine issue of fact as to whether GMM is, in fact, GCC's dba.[11] For this reason, the Court DENIES summary judgment, in part, to GMM and GCC on Count I.[12] However, Plaintiff presents no evidence to establish a genuine issue of fact as to whether Mr. Dial acted as an agent for Pastors Torres or Silva in their *personal* capacities. (*See generally* Dkt. No. 97). This is dispositive of Plaintiff's claims against these defendants. As such, the Court GRANTS summary judgment to Pastors Torres and Silva on Count I.

C. **Count II – Negligence**

The complaint next asserts that Defendants were negligent in failing to protect Plaintiff from Mr. Dial. (*See* Dkt. No. 60 at 10–12.) To support such a claim, Plaintiff must establish "the existence of a duty, the breach of such duty, causation and damages." *Guerrero v. McDonald's Intern. Prop. Co., Ltd.*, 2006 Guam 2, ¶ 2. In moving for summary judgment, Defendants all make the same argument: Plaintiff cannot establish causation[13] because his allegations represent

---

[11] On reply, GCC suggests Plaintiff's supporting caselaw is inapt, as the only case Plaintiff cites is a California case applying a legal regime not present in Guam. (S*ee* Dkt. No. 115 at 2–3.) That is beside the point. Guam courts routinely hold entities liable, even when conducting business through a dba. *See, e.g.*, *Lee v. Marianas Properties LLC*, 2023 WL 6392706, slip op. at 4 (D. Guam 2023); *Guam v. Marfega Trading Co., Inc.*, 1998 Guam 4, ¶ 27.

[12] The Court declines to reach Plaintiff's remaining arguments regarding alter ego and single enterprise theories, as each presuppose that GMM and GCC are separate legal entities. (*See* Dkt. No. 113 at 5–10.)

[13] In response, Plaintiff suggests that if the Court were to consider the motions as seeking summary judgment on the remaining elements, it should be denied. (*See* Dkt. No. 96 at 12–23.) This, in turn, results in a rebuttal argument from Defendants on the nature of the duty owed to

acts or omissions *postdating* Mr. Dial's abuse. (*See* Dkt. Nos. 69 at 15–16, 70 at 14–15, 71 at 13–14, 85 at 10–12.) Therefore, they could not be a proximate cause of Plaintiff's injury. (*Id.*) But according to the complaint, Defendants "allow[ed] Dial to come into contact with [Plaintiff] as a child without supervision . . . [and] fail[ed] to inform or conceal[ed] from [Plaintiff's] Guardians . . . that Dial was or had been sexually abusing minors" and held "out Dial to [Plaintiff's] Guardians, and to the community at large, as being in good standing and trustworthy as a person of stature and integrity . . . and deliberately concealed and disguised the sexual abuse committed by Dial." (Dkt. No. 60 at 11.) This is arguably conduct occurring before Mr. Dial abused Plaintiff.

Nevertheless, at summary judgment, more than just these naked (and seemingly conclusory) allegations are needed—Plaintiff must now put forth *evidence* in support. *See Belfield v. City of San Jose*, 53 Fed. App'x 427 (9th Cir. 2002) (citing *Lujan*, 497 U.S. at 888); *see also Keiffer v. Pernsteiner*, 967 F.2d 587 (9th Cir. 1992) ("[A] plaintiff must refute defendants' version of events by presenting 'any significant probative evidence' tending to support the allegations of his complaint . . . A genuine issue of material fact exists if, based on the evidence presented in the summary judgment proceedings, a jury could reasonably find for either the plaintiff or the defendant.") (quoting *Liberty Lobby, Inc.*, 477 U.S. at 249). And Plaintiff points the Court to no such evidence. (*See* Dkt. No. 96 at 11–12.)

Instead, Plaintiff states that causation is always a jury question. (*Id.*) Not so. Under governing *federal law*,[14] Plaintiff must put forth at least some evidence to support each element challenged, even for proximate cause, to survive summary judgment. *See Rexall Drug Co. v.*

---

Plaintiff. (*See* Dkt. No. 109 at 11–13.) Because Defendants only explicitly moved for summary judgment on the causation element, the Court declines to reach the remaining elements and/or consider the resulting argument.

[14] In support, Plaintiff cites to California and Guam precedent. (*Id.*) But this is a matter of procedural law, so those cases are inapt, as federal law controls. *See Cortez v. Skol*, 776 F.3d 1046, 1054 (9th Cir. 2015) (the standards governing summary judgment are procedural—not substantive).

ORDER
CIVIL CASE NO. 21-00029
PAGE - 8

*Nihill*, 276 F.2d 637, 645 (9th Cir. 1960) ("We are conscious of the fact that ordinarily proximate cause is a question of fact to be determined by the trier of the fact. It becomes a question of law if the proof is insufficient to raise a reasonable inference that the act complained of was the proximate cause of the injury."); *see also Steinle v. U.S.*, 17 F.4th 819, 822 (9th Cir. 2021) (requiring some facts to establish causation). And, again, Plaintiff points to none.

Accordingly, the Court GRANTS summary judgment to Defendants on Count II.

**D.  Counts III & IV – Negligent Hiring, Supervision, and Retention**

Count III asserts a claim for negligent supervision and Count IV for negligent hiring and retention. (Dkt. No. 60 at 12–14.) Both are based on allegations that Defendants knew or should have known of Mr. Dial's "abusive and exploitive propensities," and that by hiring and retaining Mr. Dial in a "position of trust and authority as a Church teacher" and not taking "reasonable measures to prevent future sexual abuse," Defendants are liable for Plaintiff's resulting harms. (*Id.*) In the context of child sexual abuse cases, claims based on negligent hiring, supervision, and/or retention require either actual or constructive knowledge of an employee's propensity for such conduct. *See, e.g., Z.V. v. Cnty. of Riverside*, 189 Cal. Rptr. 3d 570, 581 (Cal. App. 2015);[15] *Doe A. v. Green*, 298 F. Supp. 2d 1025, 1039 (D. Nev. 2004); *Doe v. Corp. of Catholic Bishop of Yakima*, 957 F. Supp. 2d 1225, 1233 (E.D. Wash. 2013).

In moving for summary judgment, Defendants assert Plaintiff fails to establish a genuine issue of fact as to whether Defendants had such knowledge. (*See, e.g.*, Dkt. No. 69 at 14–16.) The Court agrees. The only evidence Plaintiff puts forth is his own testimony[16] that Mr. Dial's

---

[15] Guam courts routinely look to other jurisdictions when analyzing negligent hiring, supervision, and/or retention claims. *See, e.g., D.M. v. Apuron*, 658 F. Supp. 3d 825, 851 (D. Guam 2023) (applying Maryland law); *Cruz v. Quichocho*, 1987 WL 109899, slip op. at 1 (D. Guam App. Div. 1987) (applying New York and Maryland law).

[16] Defendants take issue with whether this could be considered, as it appears to contradict Plaintiff's 2022 interrogatory responses. (*See id.* at 18–22.) But Plaintiff later supplemented his responses, and those statements are consistent with his deposition testimony. (*Compare* Dkt. No. 101 at 34, *with* Dkt. No. 101 at 57, 64.)

ORDER
CIVIL CASE NO. 21-00029
PAGE - 9

Facebook page, at around the same time as his abuse of Plaintiff, had a photo of "an unknown male person who looked to be a minor" whom "Dial was groping the young man's buttocks." (Dkt. No. 101 at 57, 64.) In fact, in his deposition, Plaintiff concedes that this is the only evidence he has of Mr. Dial's propensity to abuse minors. (*See id.* at 65.)

This is not sufficient evidence to carry Plaintiff's burden of persuasion at trial that Defendants had actual or constructive knowledge of Mr. Dial's propensity for sexual abuse. *See Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1106 (describe quantum of evidence required to defeat summary judgment). For instance, it does not establish when the image first appeared on Mr. Dial's Facebook account, how long it remained, whether the individual in the image was, in fact, a minor. All of which would be required to establish Defendant's constructive knowledge, particularly if the Facebook page were the only evidence of possible sexual impropriety available to Defendants at the time of Mr. Dial's hiring and/or throughout his employment term. And Plaintiff is on record stating he is aware of no other evidence. (*See* Dkt. No. 92 at 51–52.)

Accordingly, the Court GRANTS Defendants summary judgment on Counts III and IV.

### E.     Count V – Breach of Fiduciary Duty and/or Confidential Relationship

The complaint also asserts that "[b]y holding Dial out as a safe, trustworthy and highly ethical Church Teacher with integrity . . . Defendants created and entered into a fiduciary and/or confidential relationship specifically with [Plaintiff]." (Dkt. No. 60 at 15.) To support such a claim, Plaintiff must put forth evidence of "the existence of a fiduciary [or confidential] relationship, breach of that duty and damages." *Shopoff & Cavallo LLP v. Hyon*, 85 Cal. Rptr. 3d 268, 285 (Cal. App. 2008). Plaintiff alleges that his "care welfare, and/or physical custody were temporarily entrusted to Defendants" and implies that Defendants accepted that responsibility— thereby creating a fiduciary or confidential relationship. (Dkt. No. 60 at 10.) At summary judgment, more is required. Plaintiff must put forth evidence supporting these allegations. *See Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102–03. And as Defendants aptly point out,

Plaintiff provides none. (*See generally* Dkt. No. 96 at 24–25.)

Nor does Plaintiff meaningfully dispute (or even address) evidence proffered by Defendants suggesting that (1) Plaintiff was sent to Guam by his parents; (2) he initially lived and slept in the construction worker barracks, along with his uncles; (3) they dropped him off at the church gate, without an arrangement with the church for Plaintiff's care; (4) and Plaintiff later independently accepted Mr. Dial's invitation to stay at his house "for a couple of days so he could help Plaintiff with his schooling and give him a short tour of Agana Heights." (*See* Dkt. Nos. 69 at 103, 101 at 1–2.) From this, it is not clear to the Court what relationship, fiduciary or otherwise, Plaintiff had with Defendants.[17]

Accordingly, the Court GRANTS Defendants summary judgment on Count V.

### F. Count VI – Intentional Infliction of Emotional Distress

Finally, the complaint asserts a claim for intentional infliction of emotional distress ("IIED"). (*See* Dkt. No. 60 at 16–17.) To establish such a claim, Plaintiff must demonstrate the following: "(1) extreme and outrageous conduct []; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional distress, on the plaintiff's part; and (4) actual and proximate causation of that emotional distress." *Cruz Reyes v. U.S.*, 2010 WL 5207583, slip op. at 5 (D. Guam 2010). In moving for summary judgment on this claim, Defendants focus on their own conduct and intent, and suggest Plaintiff provides no evidence to meet the required standard. (*See, e.g.*, Dkt. No. 69 at 29–30.) But this presupposes Defendants are not *vicariously liable* for Mr. Dial's conduct. Because there are genuine issues of fact

---

[17] Defendants also argue that courts "across jurisdictions *unanimously*" hold a breach of duty claim to be duplicative of a negligence claim and, therefore, dismiss the breach of duty claim. (*See* Dkt. No. 69 at 26) (emphasis added). A quick review of such caselaw shows this statement to be inaccurate. *See, e.g.*, *Moshe v. TapIn2, Inc.*, 2019 WL 1883912, slip op. at 4 (C.D. Cal. 2019); *F.D.I.C. v. Johnson*, 2012 WL 5818259, slip op. at 4 (D. Nev. 2012). The Court cautions counsel that making a demonstrably false statement such as this is sanctionable conduct. While the Court will not impose a sanction in this instance, it will consider doing so if such conduct continues in this matter.

precluding summary judgment on this issue, at least to GCC and GMM, *see supra* Part II.B.2, the Court must deny summary judgment on Plaintiff's IIED claim with respect to these Defendants.

Accordingly, the Court GRANTS summary judgment to Pastors Torres and Silva on Count VI and DENIES summary judgment to GCC and GMM on Count VI.

## III. CONCLUSION

For the foregoing reasons, Defendants motions for summary judgment (Dkt. Nos. 69, 70, 71, 85) are GRANTED in part and DENIED in part. Genuine issues of fact preclude summary judgment on Counts I and VI solely against GMM and GCC. As for the remaining counts and remaining Defendants, they are entitled to judgment as a matter of law.

Within 30 days of this order, the parties are DIRECTED to meet and confer and provide the Court with a joint status report containing an estimated trial schedule (*i.e.*, number of days anticipated for trial) in light of the rulings above and three alternative trial dates based on the parties' availability. The Court will issue a revised scheduling order following receipt of this submission.

DATED this 22nd day of July 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE